Filed 11/13/25  Ventura County Professional Firefighters' Assn, v. Ventura County

Employees' Retirement Assn. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| VENTURA COUNTY PROFESSIONAL FIREFIGHTERS' ASSOCIATION, et. al., <br><br> Appellants, <br><br> v. <br><br> VENTURA COUNTY EMPLOYEES' RETIREMENT ASSOCIATION; BOARD OF RETIREMENT OF THE VENTURA COUNTY EMPLOYEES' RETIREMENT ASSOCIATION, <br><br> Respondents. | 2d Civil No. B338919 <br> (Super. Ct. No. 2023CUWM014558) <br> (Ventura County) |

Appellants Ventura County Professional Firefighters' Association (VCPFA) and five of its individual members petitioned for a writ of mandamus in the trial court challenging respondent Ventura County Employees Retirement Association's (VCERA) decision to exclude prescheduled standby pay from "compensation earnable" when calculating their pension benefits under Government Code section 31461 of the County Employees Retirement Law of 1937 (Gov. Code, § 31450 et seq.)[1]  The trial court dismissed their petition after sustaining VCERA's demurrer without leave to amend.

Appellants assert the trial court misinterpreted section 31461 and *Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032 (*Alameda*) when it sustained the demurrer.  We disagree and will affirm.  The agreements defining appellants' work schedule and compensation dictate that standby assignments—whether ad hoc or prescheduled—are outside appellants' normal working hours and thus excluded from compensation earnable pursuant to section 31461, subdivision (b)(3).

FACTUAL AND PROCEDURAL BACKGROUND

*The County's Pension System*

VCPFA "is the officially recognized bargaining representative . . . for the professional firefighters and fire prevention officers" employed by the Ventura County Fire Protection District (District).  Respondent Ventura County Employees' Retirement Association (VCERA) is the pension system for the District's employees, including appellants.  Respondent Board of Retirement (Board) administers VCERA

---

[1] All further unmarked statutory references are to the Government Code.

pursuant to CERL, the California Public Employees' Pension Reform Act of 2013 (PEPRA) (§ 7522 et seq.), and article XVI, section 17 of the California Constitution. (See *Alameda, supra,* 9 Cal.5th at pp. 1066-1067 ["The task of a county retirement board is not to design the county's pension plan but to implement the design enacted by the Legislature through CERL"].)

VCPFA's co-appellants are five employees of the District: aviation managers Melvin Lovo and Jeffrey Seabrook, and heavy equipment operators Scott Price, Christopher Beery, and Ryan Winchester. They contribute a portion of every paycheck to VCERA to fund their pension benefits. CERL governs the calculation of VCERA members' retirement allowances based on a formula comprised of an employee's: (1) age at retirement; (2) years of service; and (3) final compensation. (§§ 31676.01-31676.19.) "[A] county employee's final compensation is a critical factor in determining the amount of his or her pension benefit, because the benefit is calculated as a percentage of final compensation." (*Alameda, supra,* 9 Cal.5th at p. 1057.)

Appellants are "legacy" members of VCERA because they were employed by the county prior to the enactment of PEPRA in 2013.[2] Final compensation for legacy members is calculated based on an employee's "'[c]ompensation earnable'" during a representative period of their employment. (§§ 31462, 31462.1.) Section 31461 defines "'[c]ompensation earnable'" as "the average compensation as determined by the board, for the period under consideration upon the basis of the average number of days ordinarily worked by persons in the same grade or class of

_____

[2] Retirement benefits for non-legacy employees are governed by different statutes and are not at issue in this case. (§§ 7522.32, 7522.34).

3

positions during the period, and at the same rate of pay."
(§ 31461, subd. (a).) "As a practical matter, a retiring employee's final compensation is the annual compensation the employee would have received had he or she worked the average number of days ordinarily worked by his or her peers during the final compensation period." (*Alameda*, *supra*, 9 Cal.5th at p. 1058.)

PEPRA revised laws governing pension plans and amended provisions of CERL in response to a rise in "spiking" and other practices used to increase retirement benefits during the representative period. (*Alameda*, *supra*, 9 Cal.5th at pp. 1061-1062.) It amended section 31461 by adding subdivision (b), which excludes "[a]ny compensation determined by the board to have been paid to enhance a member's retirement benefit under that system." (Assem. Bill No. 340 (2011-2012 Reg. Sess.) ch. 296, § 28.) Among the types of compensation excluded are "[p]ayments for additional services rendered outside of normal working hours, whether paid in a lump sum or otherwise." (§ 31461, subd. (b)(3).)

*Memorandum of Agreement*

A 2021-2024 Memorandum of Agreement (MOA) between VCFPA and the District governs employees' "wages, hours, and working conditions." Three parts of the MOA are relevant here: Articles 6, 10, and 11.

Article 6 is entitled "Premium Pay." It provides additional compensation for employees who work on standby. Employees are paid one quarter of their hourly wage if placed on standby status by their Duty Chief. If called back to work, they are paid at a predetermined hourly overtime rate.

Article 10 is entitled "Hours of Work." Line assigned personnel (e.g., firefighters and investigators) work 24-hour shifts

and have a 112-hour pay period.  Employees on staff assignment, such as appellants, "work a forty (40) hour, four (4) or five (5) day work week or such other schedule constituting eighty (80) hours in a pay period . . . ."

Article 11 governs overtime.  Employees "receive overtime compensation in the form of a cash payment . . . in excess of their regularly scheduled work shift or in excess of forty (40) hours in a seven (7) day work period."  Overtime is not considered "part of the normal work schedule."

The MOA does not differentiate between different types of standby.  Appellants assert that in practice there are two types: (1) "ad hoc" standby worked at the Duty Chief's discretion when emergency conditions were forecasted; and (2) "scheduled" standby that is "assigned, regular, and reoccurring, mandatory, and part of an employee's normal working hours."  They allege the District requires them "to be on standby for a certain number of days each month as part of their normal schedules" because they have specialized skills.  "'Heavy Equipment Operator[s]'" work "a minimum" of two days per week and seven days per three-week period.  "'Aviation Manager[s]'" work an additional eight hours of standby after each shift.  As discussed below, VCERA included standby pay in its calculation of compensation earnable until 2021.

Alameda *Decision and VCERA Resolution*

*Alameda* upheld section 31461, subdivision (b)'s exclusions in July of 2020.  In response, the Board adopted a resolution stating *Alameda* "determine[d] that CERL retirement boards may not include items in retirement allowance calculations, either compensation earnable under section 31461, as amended, or pensionable compensation under section 7522.34, that the

applicable statutes require them to exclude. [¶] . . . [¶] [T]he Board hereby determines that the *Alameda* Decision and other applicable law require it to change its determinations of certain pay codes for . . . compensation earnable." VCERA staff concluded that hours worked on standby were "in excess of an employee's regular schedule . . . and thus excluded from compensation earnable." The Board ratified revised pay codes in May of 2021.

*Appeals to VCERA's Board and Side Letter*

VCERA adopted a procedure by which members could appeal the new pay codes. Appellants did so. They concede subdivision (b) excluded ad hoc standby pay but argued that *scheduled* standby fell within appellants' normal working hours. A retirement administrator rejected the appeal by letter in March of 2022, concluding that standby falls "outside of their regular shift hours" as defined in Article 10 of the MOA. The letter noted PEPRA and *Alameda* no longer permitted VCERA to include the standby pay when calculating pension benefits.

Appellants appealed a second time to the Board. The Board appointed a hearing officer to prepare recommendations. The hearing officer issued a recommended decision finding that standby was still "outside of normal work hours/normal work shifts" and not uniformly scheduled for all employees in the same "grade, group, or class." "VCERA's Board is constrained to administer legislatively set benefits," the hearing officer concluded, and to follow *Alameda*'s interpretation of Government Code Section 31461 in prohibiting the inclusion of standby pay in Appellants' members' compensation earnable."

While the second appeal was pending, VCPFA and the District executed a "Side Letter" amending Article 6 to

6

differentiate between regular (i.e., ad hoc) and scheduled standby (Side Letter). Regular standby included those employees "placed in 'stand-by' status at the discretion of the Duty Chief due to operational need, including any forecasted emergency conditions." (Bold and underlining omitted.) Scheduled standby included those "assigned to Scheduled Standby, in advance, as part of their regular work schedule." (Bold and underlining omitted.)

Appellants augmented the record to include the Side Letter and asked the hearing officer to reconsider her recommended decision. She denied the request and issued an amended decision that added: "I agree [with VCERA] that advance scheduling of standby does not render it a part of 'normal working hours' as referenced in Section 31461(b)(3), and that 'the statutory exclusions of any "additional pay for services rendered outside of normal working hours" would be rendered null and void if consideration of such pay were untethered to an assessment of what hours are in fact within the normal working hours of all members of a particular grade or class under an MOA.'" (Bold and italics omitted.) The Board adopted the amended recommended decision in June of 2023.

*Petition for Writ of Mandamus*

Appellants filed a petition for writ of traditional mandamus in the trial court challenging the Board's decision. (Code Civ. Proc., § 1085.) They included causes of action for declaratory and injunctive relief requiring VCERA to include pay for "regularly scheduled standby" when calculating their compensation earnable. They also asserted that excluding such pay violated the Contracts Clause of the California Constitution. (Cal. Const.,

art. I, § 9.)  The verified petition included the MOA, the Side Letter, and recommended decisions as exhibits, among others.

Respondents demurred.  The court sustained the demurrer without leave to amend, concluding standby pay was statutorily excluded from the calculation of pension benefits.

## DISCUSSION

### *Standard of Review*

"Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend.  [Citation.]  We assume the truth of the allegations in the complaint, but do not assume the truth of contentions, deductions, or conclusions of law.  [Citation.]  It is error for the trial court to sustain a demurrer if the plaintiff has stated a cause of action under any possible legal theory . . . ."  (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247; Code Civ. Proc., § 589.)  "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

### *PEPRA and* Alameda

While "compensation earnable has long been held not to include overtime pay," its calculation "has been a recurring issue in the implementation of CERL."  (*Alameda*, *supra*, 9 Cal.5th at pp. 1057-1058.)  This is especially true of public safety workers whose base salaries are often augmented "by a series of employee-specific add-ons to recognize, for example, special training, experience, or hazardous duty."  (*Id.* at p. 1058.)  *Alameda* examined the legislative intent behind PEPRA and its amendments to CERL.  After doing so, it upheld PEPRA

8

exclusions, including section 31461, subdivision (b)(3). (*Id.* at pp. 1059-1063.) The court observed that a bill analysis of the "pre-PEPRA version of Assembly Bill 340 explained that the purpose of these changes was to circumscribe CERL's 'very broad and general definition of "compensation earnable"' in order to reduce pension '"spik[ing],"' the manipulation of an employee's pattern of work and pay to produce inflated compensation earnable during the final compensation period." (*Id.* at p. 1061.) It noted that a review of the PEPRA exclusions "demonstrates that the Legislature sought to limit pension spiking by eliminating practices that, while arguably permitted under the broad language of the preexisting definition, are inconsistent with the statute's overall concept of compensation earnable." (*Ibid.*)

*VCERA Properly Excluded "Scheduled" Standby Pay*
*from Appellant's Compensation Earnable*

Appellants contend the trial court erred when it found amended section 31461, subdivision (b)(3) and *Alameda* categorically exclude scheduled standby pay from compensation earnable. We disagree. The terms of the MOA and Side Letter confirm that standby—whether scheduled or "ad hoc"—is worked "outside of normal working hours."

Article 10 of the MOA, entitled "Hours of Work," states "staff assignment, fire crew personnel and construction personnel *shall* work a forty (40) hour, four (4) or five (5) day work week . . . as determined by the Appointing Authority." (Italics added.) Article 6, entitled "Premium Pay," states an employee "may be placed in a 'stand-by' status *at the discretion* of the Duty Chief due to forecasted emergency conditions." (Italics added.) The Side Letter amended Article 6. One amendment created a new standby status, i.e., Scheduled Standby, solely for employees

9

classified as Fire Equipment Operators and employees assigned to the Aviation Unit.  It provides these employees "may be assigned to Scheduled Standby, in advance, as part of their regular work schedule."  The decision to assign an employee to Scheduled Standby, "including the days and hours . . . [is] *at the sole discretion* of the District Fire Chief or their designee."  (Italics added, bold and underlining omitted.)

Despite inserting the phrase "in advance, as part of their regular work schedule" into Article 6, the Side Letter does not recharacterize Scheduled Standby as appellants' "normal working hours" under section 31461.  Standby of both types is assigned, if at all, at the discretion of an employee's superiors.  The length and frequency of the employee's standby is likewise discretionary.  Article 10's provision for "Hours of Work," in contrast, is not subject to the same discretion.  It places District employees into one of two categories:  (1) "staff and construction" personnel, such as appellants, who "shall" work a 40 hour week with an 80 hour pay period; and (2) "line assigned personnel and fire investigation specialists," who "shall" work a 24 hour on/24 hour off schedule with a 112 hour pay period.  Each category of employee works these hours "as determined by the Appointing Authority," i.e., the Fire Chief.  The MOA, however, does not authorize appellants to work—or the District to approve—a "normal" week deviating from these base amounts.

All time worked "in excess of their regularly scheduled work shift or in excess of forty (40) hours in a seven (7) day work period" is compensated as overtime pursuant to Article 11.  Article 11, in turn, states that "[o]vertime worked or scheduled to be worked *shall not be considered as part of the normal work schedule*."  (Italics added.)  Time on standby, it must follow, is not

10

time appellants are "actually" working under Article 10, but time they agree the District may call them back to work an unspecified number of overtime hours under Article 11. By definition, standby is time exceeding their "regularly scheduled work shift," i.e., their base 40 hour week. We read these provisions as requiring appellants to accept standby *if* assigned and not as expanding their normal work hours. VCERA and the trial court correctly considered standby—at least as defined in the MOA and Side Letter—as "additional services rendered outside of normal working hours." (§ 31461, subd. (b)(3).)

We do not, as respondents urge, interpret section 31461 or *Alameda* as categorically prohibiting CERL pension programs from including standby or on-call pay when calculating compensation earnable. The "underlying concept of compensation earnable" is "to reflect pay for work ordinarily performed during the course of a year . . . ." (*Alameda, supra*, 9 Cal.5th at p. 1063.) The discretionary nature of standby hours is what requires us to conclude they are not hours "ordinarily performed."

Having concluded standby time is not part of the employee's normal working hours under the MOA and Side Letter, we need not decide appellants' contentions that: (1) they have a vested contractual right to have standby pay included as compensation earnable (Cal. Const., art. I, § 9); and (2) VCERA has a ministerial duty to consider it such (see *Alameda, supra*, 9 Cal.5th at p. 1067 ["although county retirement boards have the authority to interpret CERL's provisions as necessary to perform their administrative functions, they have no authority to adopt or act on an interpretation that is inconsistent with those provisions"]).

11

DISPOSITION

Judgment is affirmed. Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


CODY, J.


We concur:



GILBERT, P. J.



BALTODANO, J.

Henry J. Walsh, Judge

Superior Court County of Ventura

_____

Mastagni Holstedt, David E. Mastagni, Taylor Davies-Mahaffey, and Amanda R. McCarthy, for Appellants, Ventura County Professional Firefighters' Association, et al.

Nossaman, Ashley K. Dunning and Alexander Westerfield, for Respondents, Ventura County Employees' Retirement Association and Board of Retirement of the Ventura County Employees' Retirement Association.